UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

TONI HANSEN and RONALD HANSEN,  )
                                )
          Plaintiffs,           )
                                )
v.                              )   2:11-cv-01586-PMP-PAL
                                )
COUNTRYWIDE FINANCIAL           )   ORDER
CORPORATION and COUNTRYWIDE     )
HOME LOANS, INC.,               )
                                )
          Defendants.           )

Presently before the Court is Defendants Countrywide Financial Corporation ("CFC") and Countrywide Home Loans, Inc.'s ("CHL") Motion for Judgment on the Pleadings (Doc. #36), filed on October 9, 2012. Plaintiffs Toni Hansen and Ronald Hansen filed an Opposition (Doc. #37) on October 26, 2012. Countrywide Financial Corporation and Countrywide Home Loans, Inc. filed a Reply (Doc. #38) on November 5, 2012.

Also before the Court is Defendants' Motion for Summary Judgment (Doc. #50/#52), filed on May 8, 2013. Plaintiffs filed an Opposition (Doc. #55) on June 28, 2013. Plaintiffs filed a Declaration of James Adams, Esq. (Doc. #56) in support of their Opposition on July 8, 2013. Defendants filed a Reply (Doc. #59), supported by the Affidavit of Lanisa Jenkins (Doc. #60), on July 29, 2013.

**I. BACKGROUND**

In 1993, Plaintiffs Toni Hansen and Ronald Hansen (together, the "Hansens") purchased raw land located at 5885 West Post Road, Las Vegas, Nevada 89118-3408 (the "Property"). (Mot. for Summ. J. (Doc. #50/#52) ["MSJ"], Ex. A, Ex. I at 7-8.) In 2003 and

2005, the Hansens obtained loans in the amounts of $210,000 and $263,000, secured by deeds of trust on the Property, to construct a home on the Property. (MSJ, Ex. B at 2, Ex. C at 1.) Both loans had variable interest rates. (Id.)

In 2005, the Hansens spoke on multiple occasions with Ace Mortgage Funding, LLC ("Ace"), a mortgage broker, to discuss options for refinancing their previous loans. (MSJ, Ex. H at 6-7, 14-16, Ex. I at 11.) An appraisal report prepared by Empire Appraisal Services, LLC for Ace indicated that as of August 5, 2005, the Property was valued at $700,000. (MSJ, Ex. D at 1-2.) The Hansens requested Ace's help in obtaining a $500,000 fixed rate loan, but the Hansens did not qualify for the loan. (MSJ, Ex. H at 7, 16, 20.) The Hansens ultimately obtained a "pay option" adjustable rate mortgage loan in the amount of $294,000 on August 18, 2005. (MSJ, Ex. E at 2-3, Ex. F.) The same date, the Hansens also obtained an adjustable rate "piggyback" home equity line of credit in the amount of $200,000. (MSJ, Ex. E at 26-28, Ex. G at 3.) Repayment of the loans was secured by two deeds of trust on the Property. (MSJ, Ex. E.) The deeds of trust identify Defendant CHL as the lender, but they do not reference Defendant CFC. (Id. at 3, 27.) The purpose of these loans was to pay off the Hansens' prior loans, to complete construction of their home, and for other expenses. (MSJ, Ex. H at 18-19.)

The Hansens testified that Ace's loan officer told them the Property would increase in value, creating enough value that they would be able to refinance the loans at a lower fixed rate a few years after 2005. (MSJ, Ex. H. at 29-32, 34-36, Ex. I at 35, 41, 45, Ex. M at 6, 15, 20.) The Hansens further state that Ace misrepresented that the value of their Property was in excess of the principal amount of the loans when in fact the Hansens were borrowing money in excess of the true value of their Property. (MSJ, Ex. M at 6, 15, 20.) The Hansens also state that Ace misrepresented that the loans were "good and sound loans" and that they would "save money." (MSJ, Ex. M at 6, 15, 20.)

///

According to Ronald Hansen, he relied on Ace's representation that he would be able to refinance the loans. (MSJ, Ex. H at 34-35.) Ronald Hansen averred that he did not know whether Ace knew there was an impending financial crisis when the Hansens obtained their loans, but that he would not have borrowed the money if he had known there would be a financial crisis. (Id. at 36-37.) Ronald Hansen also averred that he contacted multiple lending institutions in 2008 and 2010, but that the Hansens were unable to refinance at a lower fixed rate because they did not qualify for the $500,000 fixed rate loan in the first place. (Id. at 23-24, 30.) Toni Hansen averred they were not able to refinance because the market crashed, but she also averred they have not tried to refinance. (MSJ, Ex. I at 21, 46.)

The Hansens present various internal email exchanges between Countrywide[1] executives in 2005 in an effort to show Defendants knew the representations that Ace made to the Hansens regarding their ability to refinance the loans and the value of their Property were false. (Pls.' Response to Mot. for Summ. J. (Doc. #55) ["Opp'n"], Ex. 1.) Specifically, the Hansens present an August 1, 2005 email from Countrywide's then Chief Executive Officer Angelo Mozilo ("Mozilo")[2] to Managing Directors Carlos Garcia

---

[1] In their filings, the Hansens refer to "Countrywide" and its executives generally, without specifying whether they are referring to Defendant CHL, Defendant CFC, or some other entity. According to Lanisa Jenkins, Defendants' person most knowledgeable, CHL was a subsidiary of CFC. (Decl. of James Adams, Esq. (Doc. #56), Ex. 1 at 8.)

[2] The Hansens refer to the email's sender as "Andrew Mozilo," however, the email was sent by "Angelo Mozilo." (Pls.' Response to Mot. for Summ. J. (Doc. #55), Ex. 1 at 1198.) In their Answers to Interrogatories, Defendants state that nobody named "Andrew Mozilo" worked for CFC or CHL between the years of 2005 and 2008. (MSJ, Ex. K at 3, Ex. L at 3.) However, Lanisa Jenkins, Defendants' person most knowledgeable, testified that "Angelo Mozilo was the managing director of Countrywide Financial, Countrywide Home Loans, all of Countrywide. I don't remember all of the titles that he held during that time. I know he was the president. I know he was the CEO. So at last call in 2005 it says managing director." (Decl. of James Adams, Esq. (Doc. #56), Ex. 1 at 11.)

("Garcia")[3] and Stan Kurland ("Kurland")[4] indicating he knew the Las Vegas real estate prices could not be sustained and that a collapse of the housing market was anticipated. (Opp'n, Ex. 1 at 1198-99.)  The Hansens also present an August 2, 2005 email from Mozilo to Dave Sambol ("Sambol"),[5] Kurland, and Garcia as evidence that Defendants aggressively marketed the types of loan products sold to the Hansens even though Defendants knew it would result in mass foreclosures.  (Id. at 1197.)  The Hansens offer another email dated August 2, 2005 from Garcia to Mozilo, Kurland, and Sambol as evidence that Defendants knew that home prices were artificially inflated and that borrowers were borrowing money in excess of homes' actual values.  (Id.)

The Hansens also point to an April 17, 2006 email from Mozilo to Sambol regarding Defendants' "sub-prime second business" stating "[i]n all my years in the business I have never seen a more toxic product."  (Id. at 1209.)  Finally, the Hansens offer as evidence that Defendants knew that delinquencies and foreclosures were imminent and that housing prices would not increase a September 26, 2006 email from Mozilo to Sambol and Garcia stating "[t]he bottom line is that we are flying blind on how [pay option] loans will perform in a stressed environment of higher unemployment, reduced values and slowing home sales."  (Id. at 1216.)

---

[3] Defendants contend that seven different individuals named Carlos Garcia worked for CFC or CHL between 2005 and 2008 and therefore they cannot ascertain which individual to whom the Hansens are referring.  (MSJ, Ex. K at 3, Ex. L at 3.)  However, Lanisa Jenkins averred that Carlos Garcia was "one of the managing directors at Countrywide."  (Decl. of James Adams, Esq. (Doc. #56), Ex. 1 at 13.)

[4] Stan Kurland was the President and Chief Operating Officer of CFC.  (MSJ, Ex. L at 3.)  He was not employed by CHL.  (MSJ, Ex. K at 3.)

[5] Based on the record, it is unclear what position Dave Sambol held at Countrywide.  CHL's Answers to Toni Hansen's Interrogatories state he was President of CHL.  (MSJ, Ex. K at 3.)  CFC's Answers to Toni Hansen's Interrogatories state he was "President and Chief Operating Officer of CFC."  (MSJ, Ex. L at 3.)  Lanisa Jenkins averred that Dave Sambol "was one of the managing directors for Countrywide."  (Decl. of James Adams, Esq. (Doc. #56), Ex. 1 at 12.)

1       The Hansens brought suit in Nevada state court against Defendants CFC and CHL, alleging claims for deceptive trade practices/consumer fraud (count one), unfair lending practices (count two), fraud (count three), negligence (count four), and injunctive relief (count five). (Pet. for Removal (Doc. #1), Ex. A ["Compl."] at 24-29.) Defendants removed the action to this Court on September 30, 2011. (Pet. for Removal.) On March 19, 2012, the Court dismissed the Hansens' claims for unfair lending practices and injunctive relief. (Order (Doc. #29).)

        Defendants now move for summary judgment on all remaining claims, arguing there is an absence of evidence supporting the Hansens' claims. Specifically, Defendants argue the CFC executives' emails on which the Hansens rely are unauthenticated and irrelevant and therefore cannot support the Hansens' claims. Defendants further argue the Hansens have not been damaged because they have not yet completed an application to refinance the loans at issue and therefore have not been rejected for refinancing. Defendants also argue the Hansens have not been damaged because their interest rates are commensurate with current market interest rates. Finally, Defendants argue the Hansens' deceptive practices/consumer fraud, fraud, and negligence claims fail as a matter of law given the lack of admissible evidence in support of the claims.

        The Hansens respond that Defendants' person most knowledgeable, Lanisa Jenkins ("Jenkins"), authenticated the emails and that the emails are relevant. Regarding damages, the Hansens argue that "Defendants have provided to this Court absolutely no evidence that the Plaintiffs have not been damaged. Thus, they have failed to establish an undisputed material fact." (Opp'n at 11.) The Hansens further argue they were damaged because they would not have taken the loans from CHL without Ace's misrepresentations, they have paid over $15,000 in fees, they have continued to pay their loan payments "unlike most borrowers," they are paying on loans well in excess of the Property's value, and they are locked into an adjustable rate loan, which, if interest rates rise, they will be unable to

pay.  (Id.)  Finally, the Hansens respond that their claims are well pled and properly supported.

Defendants reply that Jenkins did not properly authenticate the emails. Regarding damages, Defendants argue that the threat interest rates may rise in the future is too uncertain and speculative to support a claim for damages, and Defendants point out it is possible that interest rates could fall.  Defendants further argue the Hansens fail to present evidence that Ace was Defendants' agent such that Ace's alleged misrepresentations can be imputed to Defendants.

## II.  EVIDENTIARY OBJECTIONS

Defendants object to the emails on which the Hansens rely on the grounds that the emails are unauthenticated and irrelevant.  Specifically, Defendants argue the Hansens did not depose Mozilo, Garcia, Sambol, or Kurland to authenticate the emails.  Defendants further argue the emails are irrelevant because only three of the emails were sent before the origination of the Hansens' loans on August 18, 2005.  Defendants also argue the emails are irrelevant because they discuss condominium investors with credit scores below a certain number, and the Hansens are not investors, did not purchase a condominium, and had credit scores greater than the credit scores referenced in the emails.  Defendants also argue that because CHL originated the Hansens' loans, the emails are irrelevant because they were exchanged between CFC executives.  Thus, Defendants argue the content of CFC's emails cannot be imputed to CHL.

The Hansens respond that Jenkins authenticated the emails in her deposition. They further respond that all of the emails are relevant, including emails sent after the Hansens' loans were originated, because correspondence after the loans' origination may inform the trier of fact of Defendants' state of mind before the loans' origination.

Defendants reply that Jenkins did not properly authenticate the emails. Specifically, Defendants argue Jenkins did not have the requisite personal knowledge to

6

1 testify as to whether the emails were true and correct copies of the emails exchanged by the
2 executives because she did not send or receive the emails.  Defendants further argue that in
3 her deposition, Jenkins did not authenticate the emails and only acknowledged that the
4 emails appeared to be sent to or from Countrywide email addresses by Countrywide
5 employees.  Defendants also contend the transcript of Jenkins's deposition on which the
6 Hansens rely is not properly authenticated.  Finally, Defendants reiterate their arguments
7 that the emails are irrelevant and, for the first time on reply, argue the emails are
8 inadmissible hearsay.

9 "A district court's ruling on a motion for summary judgment may only be based
10 on admissible evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 385 (9th Cir. 2010).
11 "Authentication is a condition precedent to admissibility, and this condition is satisfied by
12 evidence sufficient to support a finding that the matter in question in what its proponent
13 claims." Orr v. Bank of Am., NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (citing Fed. R.
14 Evid. 901(a)) (quotation and footnote omitted).

15 The proponent of evidence must make a prima facie showing of authenticity such
16 that a reasonable juror could find in favor of authenticity. United States v. Tank, 200 F.3d
17 627, 630 (9th Cir. 2000).  Pursuant to Federal Rule of Civil Procedure 56(c), documents
18 authenticated through personal knowledge must be "attached to an affidavit that meets the
19 requirements of [Rule 56(c)] and the affiant must be a person through whom the exhibits
20 could be admitted into evidence." Orr, 285 F.3d at 774 (quotation omitted).  A party also
21 may authenticate an exhibit by any means listed in Federal Rules of Evidence 901(b) and
22 902.  See Fed. R. Evid. 901(b) (providing ten methods of authentication including
23 testimony of a witness with knowledge); Fed. R. Evid. 902 (listing self-authenticating
24 evidence such as public documents under seal, certified copies of public records, and
25 acknowledged documents).  For instance, a document may be authenticated under Federal
26 Rule of Evidence 901(b)(1) "by a witness who wrote it, signed it, used it, or saw others do

7

so." Orr, 285 F.3d at 774 n.8 (quotation omitted). Finally, a party may authenticate an exhibit through other means that establish a prima facie showing of authenticity such that a reasonable juror could find in favor of authenticity, such as judicial notice. See Fed. R. Evid. 201. It is within the Court's discretion whether to exclude evidence. Orr, 285 F.3d at 773.

In her deposition, Toni Hansen testified that she obtained the emails from her attorney after initiating this lawsuit and that she did not have independent knowledge of the emails. (MSJ, Ex. I at 27, 46.) According to the Hansens, Jenkins authenticated the emails in her deposition. (Decl. of James Adams, Esq. (Doc. #56) at 1-2, Ex. 1 at 8:19-14:23.) Specifically, Jenkins testified that she recognized two email addresses as Countrywide email addresses and that the emails were to or from Countrywide employees:

> Q. If you could go down just past the first paragraph where it says on one line "Dave Sambol managing directors/CF/CCI." Over to the right it says "To Carlos Garcia managing directors/CF/CCI@Countrywide. Can you recognize that as an e-mail to a Countrywide employee or agent?
>
> A. Yes.
>
> Q. Under the cc line it says "Angelo Mozilo managing director/CF/CCI@Countrywide. Same question, would that be a cc to a person, Angelo Mozilo, working at Countrywide?
>
> A. Yes.
>
> Q. Is it safe to say any time that those initials or words are used, you would feel comfortable saying that that would be an e-mail to or from a Countrywide employee?
>
> A. Yes.

(Decl. of James Adams, Esq., Ex. 1 at 14.)

Jenkins did not write or receive the emails at issue, and she does not testify that she saw others do so or that she otherwise had first-hand knowledge regarding the emails. In her deposition, Jenkins did not authenticate the emails as true and correct copies. Instead, she testified that she recognized the email addresses as Countrywide email

addresses and acknowledged that the emails were to or from Countrywide employees. (Id.) Beyond Jenkins's testimony, the emails were not attached to affidavits that meet the requirements of Federal Rule of Civil Procedure 56(c). Moreover, the emails are not self-authenticating evidence. See Fed. R. Evid. 902. The Court, in its discretion, therefore will not rely on the emails attached as Exhibit 1 to the Hansens' Opposition for the purposes of ruling on Defendants' Motion for Summary Judgment because the emails are unauthenticated.

As for Jenkins's deposition transcript, the transcript does not include a signed copy of the reporter's certificate to independently authenticate it as required by Federal Rule of Civil Procedure 30(f)(1). Although the transcript was attached to attorney James Adams's declaration, a declaration of counsel is insufficient to authenticate a deposition transcript, even if counsel was present at the deposition. See Orr, 285 F.3d at 774. The Court, in its discretion, therefore will not rely on Jenkins's deposition transcript for the purposes of ruling on Defendants' Motion for Summary Judgment because the transcript is unauthenticated.

**III. MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if the pleadings, the discovery and disclosure materials on file, and any affidavits "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is "material" if it might affect the outcome of a suit, as determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is "genuine" if sufficient evidence exists such that a reasonable fact finder could find for the non-moving party. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

Initially, the moving party bears the burden of proving there is no genuine issue of material fact. Leisek v. Brightwood Corp., 278 F.3d 895, 898 (9th Cir. 2002). After the

moving party meets its burden, the burden shifts to the non-moving party to produce evidence that a genuine issue of material fact remains for trial. Id.  Where a party fails to offer evidence sufficient to establish an element essential to its case, no genuine issue of material fact can exist, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court views all evidence in the light most favorable to the non-moving party. Leisek, 278 F.3d at 898.

Defendants argue they are entitled to summary judgment as to Plaintiffs' remaining claims for deceptive trade practices/consumer fraud (count one), fraud (count three), and negligence (count four) because they are not supported by admissible evidence. Plaintiffs rely primarily on two arguments in support of these claims.  First, Plaintiffs argue the Countrywide executives' emails establish Defendants "had actual knowledge of the defects in the adjustable rate mortgage products and the pending collapse of the Las Vegas housing market," and therefore knew Ace's representations to the Hansens were false. (Opp'n to MSJ at 12.)  As previously discussed, the Court cannot consider the emails for summary judgment purposes because the emails are unauthenticated.

Second, Plaintiffs argue that Ace was Defendants' agent, and therefore Defendants are liable for Ace's misrepresentations to the Hansens.  Defendants recognize that a mortgage broker may be an agent of a lender in certain circumstances, thereby rendering the lender liable for the mortgage broker's acts.  However, Defendants contend the evidence must show an agency relationship existed.  Defendants argue the only evidence the Hansens provide in support of an agency relationship in this case is a letter from an entity that is not a defendant in this action and which does not show an agency relationship between Defendants and Ace.

A mortgage broker may be an agent of a lender. Young v. Nev. Title Co., 744 P.2d 902, 903 (Nev. 1987).  Whether an agency relationship exists is a question of fact. Id.

10

Here, the only evidence the Hansens submit in support of their argument that Ace is Defendants' agent is the letter from "Countrywide Bank, a Division of Treasury Bank, N.A.," which is not a defendant in this case, stating Countrywide Bank had received the Hansens' loan application from its "business partner," Ace. (Opp'n, Ex. 4 at 1.) The letter does not mention Defendants CFC or CHL or otherwise indicate that CFC or CHL have a principal-agent relationship with Ace. Nor do the Hansens point to any other evidence in the record indicating that an agency relationship exists between CFC or CHL and Ace.[6] Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1028-31 (9th Cir. 2001) (stating that a court need not "comb the record" looking for a genuine issue of material fact if the party has not brought the evidence to the court's attention) (quotation omitted). Viewing all evidence and the inferences therefrom in the light most favorable to the Hansens, no genuine issue of material fact remains that Ace was not CFC or CHL's agent.

Without evidence that Ace was Defendants' agent, the Hansens cannot show that Defendants are liable for Ace's alleged misrepresentations or that Defendants owed the Hansens a duty of care by virtue of Defendants' alleged agency relationship with Ace. As for the Hansens' deceptive trade practices/consumer fraud and fraud claims, besides the emails, the only evidence regarding Ace's alleged misrepresentations are Ronald Hansen and Toni Hansen's depositions, in which they aver Ace misrepresented various facts regarding Defendants' loan products. (MSJ, Ex. H at 29-32, 34, 37, Ex. I at 35, 45-46.) Because of the Hansens' failure of proof, no genuine issue of fact remains that Ace was not Defendants' agent. Thus, the Hansens' deposition testimony regarding Ace's representations does not create an issue of fact as to whether Defendants engaged in

---

[6] In their Reply, Defendants also provide a copy of their standard Wholesale Broker Agreement, which Jenkins avers was used between CHL and its mortgage brokers in August of 2005 when the Hansens' loans were originated. (Reply in Support of Mot. Summ. J. (Doc. #59), Ex. 2 at § 9.2.) The Wholesale Broker Agreement provides "[n]othing contained herein shall constitute a partnership or joint venture between CHL and Broker and neither party shall at any time hold itself out to any third party to be an agent or employee of the other." (Id.)

deceptive trade practices or fraud.  The Hansens do not point to any other admissible evidence in the record indicating that Defendants engaged in deceptive trade practices or fraud.  The Court therefore will grant summary judgment in favor of Defendants as to the Hansens' deceptive trade practices/consumer fraud and fraud claims.

As for the Hansens' negligence claim, without evidence that Ace was Defendants' agent, the Hansens cannot show that Defendants owed the Hansens a duty of care by virtue of Defendants' alleged agency relationship with Ace.  In its capacity as a lender, CHL owes no duty of care to the Hansens beyond its contractual duties.  See Yerington Ford, Inc. v. Gen. Motors Acceptance Corp., 359 F. Supp. 2d 1075, 1089-90 (D. Nev. 2004), overruled on other grounds by Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865 (9th Cir. 2007).  With respect to CFC, the Hansens do not present any evidence indicating that CFC also was the Hansens' lender or otherwise connecting CFC to the loans at issue in this case.  Absent a duty to the Hansens, Defendants cannot be liable for negligence as a matter of law.  See Klasch v. Walgreen Co., 264 P.3d 1155, 1158 (Nev. 2011) (en banc).  The Court therefore will grant summary judgment in favor of Defendants as to the Hansens' negligence claim.  Given that the Court grants summary judgment in favor of Defendants as to the Hansens' deceptive trade practices/consumer fraud, fraud, and negligence claims, the Court will deny as moot Defendants' Motion for Judgment on the Pleadings, which covers the same claims.

**III. CONCLUSION**

IT IS THEREFORE ORDERED that Defendants Countrywide Financial Corporation and Countrywide Home Loans, Inc.'s Motion for Summary Judgment (Doc. #50/#52) is hereby GRANTED.

IT IS FURTHER ORDERED that Defendants Countrywide Financial Corporation and Countrywide Home Loans, Inc.'s Motion for Judgment on the Pleadings (Doc. #36) is hereby DENIED as moot.

IT IS FURTHER ORDERED that the Clerk of Court shall enter Judgment in favor of Defendants Countrywide Financial Corporation and Countrywide Home Loans, Inc. and against Plaintiffs Toni Hansen and Ronald Hansen.

DATED: September 26, 2013

_____
PHILIP M. PRO
United States District Judge

13